**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HUGH ONEAL,

          *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant*.

_____/

CASE NO. 4:17-cv-11380

DISTRICT JUDGE TERRENCE G. BERG

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**
**MOTIONS FOR SUMMARY JUDGMENT (Docs. 12, 13)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 12), be **GRANTED**, the Commissioner's Motion, (Doc. 13), be **DENIED**, and this case be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Hugh O'Neal's claim for Disability Insurance Benefits ("DIB") under

1

Title II, 42 U.S.C. § 401 *et seq.* (Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13).

On October 10, 2014, Plaintiff filed an application for DIB, alleging a disability onset date of June 26, 2013. (Tr. 137-38). The Commissioner denied his claim. (Tr. 102-11). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on February 26, 2016, before ALJ Crystal L. White-Simmons. (Tr. 50-101). The ALJ issued a decision on March 11, 2016, finding Plaintiff not disabled. (Tr. 26-40). On March 9, 2017, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on April 30, 2017. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

2

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

3

meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we condiser our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled. (Tr. 26-40). At Step One, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014, and had not engaged in substantial gainful activity in the interval between his alleged onset date of June 26, 2013, and his date last insured. (Tr. 31). At Step Two, the ALJ concluded that the following impairments qualified as severe: rheumatoid arthritis, left shoulder rotator cuff syndrome, and history of bilateral carpal tunnel syndrome. (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 32). Thereafter, the ALJ found that during the relevant time period Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except:

> [T]he claimant could sit for 6 hours and stand or walk for 4 hours in an 8-hour workday. He could lift 20 pounds occasionally and 10 pounds frequently. He could perform occasional bilateral pushing or pulling with the upper extremities. He could never climb ladders, ropes, or scaffolds. He could occasionally balanc[e], stoop[], crouch, kneel, crawl, and climb ramps or stairs. He could perform occasional bilateral handling and fingering. He should avoid unprotected heights. He should avoid concentrated exposure to humidity.

(*Id.*). At Step Four, the ALJ found Plaintiff incapable of performing his past relevant work through the date last insured. (Tr. 35). Proceeding to Step Five, the ALJ determined prior to his date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*).

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   Application Reports and Administrative Hearing

##### i.   Function Report

On August 5, 2014, Plaintiff filled out a Function Report which appears in the administrative record. (Tr. 175-82). He described his conditions as causing "constant joint pain mostly in my hands and ankles." (Tr. 175). Most days he spent "a while" getting out of bed due to "joint stiffness and pain," which often limited his ability to do chores. (Tr. 176). He took care of his three-year old daughter, and remained able to "walk, work, exercise." (*Id.*). In personal care activities, he noted difficulty dressing and putting on his shoes, as well as taking showers. (*Id.*). He prepared "[m]ostly easy meals," such as sandwiches or frozen dinners, when his wife was not available to cook. (Tr. 177). Even so, cooking took him "longer than it did before I got sick." (*Id.*). On occasion, he did "some cleaning that does not involve standing long or bending or kneeling," "light dishes," and

"maybe switching laundry over." (*Id.*). "The things I don't do are because it's too hard to stand/walk or kneel." (Tr. 178).

Despite these difficulties, he was able to drive, shop for groceries twice a month, pay bills, count change, handle a savings account, and use a checkbook and money orders. (*Id.*). He continued to enjoy hunting, fishing, and baseball, though no longer hunted and rarely fished any longer. (Tr. 179). He also enjoyed spending time with his daughter "as long as I do not have to get on the floor," and attending family dinners and barbecues. (*Id.*).

Asked to mark what abilities were difficult for him, Plaintiff identified the following movements: lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks, and using his hands. (Tr. 180). "I can no longer get to a sitting position on the floor," and he could not "walk for more than 15-20 min[utes] at a time. It takes everything I have to go up or down stairs." (*Id.*).

The record also contains a Third-Party Function Report from Crystal O'Neal, Plaintiff's wife. (Tr. 167-74). It provides commentary consistent with Plaintiff's own testimony. In certain areas, it adds context. She notes that Plaintiff required "several hours being awake before he is able to walk" on most days. (Tr. 167). He also struggled shaving and using the toilet due to pain in his hands, knuckles, and knees. (Tr. 168). He used a riding lawnmower to mow his lawn, but needed "[a] lot of breaks" when he did so. (Tr. 169). She specified that "[a]ll activities that require bending of any joint are affected—the amount to which they are affected varies throughout the day. This makes completing tasks difficult." (Tr. 172).

### ii.        Plaintiff's Testimony at the Administrative Hearing

Plaintiff opened his testimony by describing his home, which had a second floor and a basement. (Tr. 58). To avoid the stairs, he stayed on the main floor. (*Id.*). On occasion he ventured downstairs to the basement to do laundry. (Tr. 59). He no longer picked up his five-year-old daughter because she was too heavy for him. (Tr. 59-60). His ability to drive was "[p]retty limited," but he drove to the gas station and to take his daughter to school "[m]aybe twice" a week. (Tr. 61). Although he never finished college, he participated in graphic arts vocational training while in high school and proved himself fairly proficient in that field. (Tr. 63). He last worked for a company fertilizing lawns in 2009. (Tr. 64). That job occasionally required lifting up to fifty pounds. (Tr. 66). Before this fertilizing company, he worked in a warehouse packaging various items for about five years. (Tr. 67). It required him to stand "literally the whole time, because . . . you are standing at a packing table the entire time packing boxes, going around to the shelves, picking stuff." (Tr. 68). He also operated the "high lo" in the warehouse. (Tr. 69). Before the warehouse job, he worked for Premier Park "on the executive suite level" as a "food and beverage runner." (*Id.*). This involved taking "all the pop, beer, wine, liquor" and putting "it on carts and then we would take that out to the suites and put it in the fridges." (*Id.*). That contract was eventually sold to Olympia Entertainment at the Detroit Zoo, but the job requirements remained the "[s]imilar." (Tr. 71). Aside from these jobs, he also worked in a wholesale company and for a landscape company. (Tr. 72).

The ALJ then inquired further into Plaintiff's physical condition. Plaintiff summarized his problems:

> I'm 36 and it's so difficult now for me to even get up. Some days my ankles
> hurt so bad, the pain is like just throbbing, aching, and some days I can't even
> put pressure on my ankles. It is so difficult. And sometimes I wish the pain
> was just generalized to one area, but it jumps around. It moves. Sometimes
> my shoulders. You know, sometimes I can't lift my arms or barely use my
> hands. . . . It's just the pain is incredible sometimes.

(Tr. 73). Plaintiff indicated that, even as he sat at the hearing, his knee was the size of "a

softball." (*Id.*). And sometimes the swelling in his hand prevented him from taking off his

wedding ring. (Tr. 74). Of his issues, however, he said the pain in his shoulders was "the

big thing." (*Id.*). On a regular basis, he ranked his shoulder pain at a three to five on a ten-

point scale. (Tr. 75). The same ranking applied to his ankle pain. (*Id.*). On bad days,

however, the pain reached the level of a nine or ten on the same scale. (Tr. 77). He did not

take pain medication because "I tried on two separate occasions, but they upset my stomach

so much that it's not worth it to me to have it. It didn't help. I mean, if they would like at

least cut the pain in half, then I think that they would be acceptable, but they don't even

cut the pain in half." (Tr. 76). He tried stretching in the morning "like the doctor has told

me I should do," and he wore wrist braces each night, but these treatments could not erase

the pain either. (Tr. 76-77).

Plaintiff retained the ability to walk "half a city block" before needing to "sit down

and relax," and he could lift "less than 35 pounds, . . ." (Tr. 81). Swelling in his hands made

closing them "all the way" impossible. (*Id.*). He also had trouble stooping, kneeling,

crawling, and bathing. (Tr. 83). In a typical day, he helped prepare his daughter for school,

and when his wife took her to school he would tool around the house and attempt some

light chores (*i.e.* wipe the counters, do a load of laundry, put away the dishes and

silverware) "but I literally find myself having to stop, sit down, sometimes put my feet up." (Tr. 85-86). Though he went to the movies sometimes, he no longer hunted or fished. (Tr. 88-89). His pain regularly interrupted his sleep. (Tr. 89). On bad days, his pain would prevent him from concentrating at all. (Tr. 91). With medication, his pain remained at a five out of ten most of the time. (Tr. 92).

### iii.        The VE's Testimony at the Administrative Hearing

The VE began by outlining Plaintiff's past work as: "[p]icker, packer," heavy both as performed and per the DOT; "lawn service worker," medium as performed but heavy per the DOT; and "food runner," heavy both as performed and per the DOT. (Tr. 95-96). The ALJ then posed her first hypothetical: "[A]ssume a hypothetical individual of the claimant's age and education with the past jobs that you have described. Further assume the individual is limited to sedentary work, which specifically would include sitting for six hours out of an eight hour work day, including stand or walk for hours out of the work day. Also, include the fact the ability to sit or stand alternatively at will, after a half hour of sitting. Additionally, they will need to lift and carry 20 pounds occasionally, 10 pounds frequently. Frequent pushing or pulling with the bilateral upper extremity, no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, precluded to balancing and stooping, occasional crouching, crawling, and kneeling, and frequent bilateral handling and fingering. Can the hypothetical individual perform any of the past jobs that you described?" (Tr. 96-97). The VE indicated that such an individual could perform none of Plaintiff's prior work, but that other jobs existed in the national economy that the individual could perform: "inspector" (with 100,000 jobs in the national economy), "[s]orter" (with

120,000 jobs in the national economy), and "assembler" (with 150,000 jobs in the national economy). (Tr. 97-98).

The ALJ's second hypothetical imagined a person "also" capable only of "sedentary, with sitting for six hours, the standing and walking four hours. This one also has the ability to lift and carry 20 pounds occasionally or 10 pounds frequently, only occasional bilateral pushing and pulling, no climbing of ladders, ropes, and scaffolds, occasional climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching, and crawling, occasional bilateral, handling, and fingering with no unprotected heights, as well as no concentrated exposure to humidity. Can this individual perform any of the past work?" (Tr. 98). Again, the VE indicated that such an individual could not perform Plaintiff's past work, but that he could perform work as "a surveillance system monitor" (with 60,000 jobs in the national economy). (*Id.*).

For the ALJ's final hypothetical, she described someone with "all the same limitations as the second hypothetical, except in addition this person would be absent from work four or more days per month. Is there any work this individual could perform?" (Tr. 99). The VE said that "no competitive employment" existed for such a person. (*Id.*).

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who

are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting

objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*,

14

749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed

15

prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff furnishes three discrete arguments in his Motion for Summary Judgment: (1) the ALJ improperly found Plaintiff capable of performing a reduced range of sedentary work, (Doc. 12 at ID 469-74); (2) the ALJ inadequately weighed the opinion of Dr. Kahlil, Plaintiff's treating physician, (*Id.* at ID 474-81); and (3) the ALJ's credibility finding lacks support, (*Id.* at ID 481-85). I address each argument in turn.

### 1.    RFC Finding

Plaintiff first broadly challenges the ALJ's finding that Plaintiff could perform a limited range of sedentary work. He suggests no "examining" source supports the ALJ's RFC findings, which mars her conclusions. (Doc. 12 at ID 470). The ALJ, in his view, granted gratuitous weight to the opinion of Dr. Nelson, a "record reviewing doctor" who rendered his opinion on October 8, 2014, without access to all the evidence of record, (*Id.* at ID 471). Furthermore, the ALJ "arbitrarily reject[ed] uncontroverted medical testimony" from Dr. Kahlil's, (*Id.* at ID 472).[1] In sum, "rather than obtaining additional medical evidence after receiving all the medical records, as well as the treating physicians [sic]

---

[1] Plaintiff also devotes a full section of his brief to this particular argument. I address the ALJ's treatment of Dr. Kahlil's opinion in this segment only to the extent necessary to respond to Plaintiff's overarching argument about an alleged lack of support for the ALJ's RFC assessment. But I delve into more detail about such treatment in the section immediately following this one.

RFC, the ALJ made medical judgments based on her own review of the medical records and improperly assessed the RFC for" Plaintiff. (*Id.* at ID 473).

At the outset, I note that while Plaintiff supposes the ALJ might have gathered additional medical evidence rather than rely on her own medical judgments, (*Id.*), the Plaintiff does not actually seem to suggest the ALJ erred in not seeking out additional evidence. Rather, this prospect appears posed as merely a hypothetical alternative to what the ALJ actually did, which was allegedly error. Plaintiff spills no more ink in considering this issue, and therefore I address it only to say that the ALJ's decision not to seek more evidence was not error. Such a duty only exists where the evidence before the ALJ is equivocal. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) ("The lack of clear medical evidence, in light of the impairments suggested by the physicians, prevented fair review of Johnson's claim."); *cf., e.g.*, *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (advising ALJs to "resist the temptation to substitute [their] own interpretation of medical records for that of a physician who has examined the records," but noting that no case law "even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered"). Plaintiff does not suggest that the evidence of record was equivocal, and as I discuss below, it was not.

An ALJ need not rely on an examining physician to bolster her opinion, so long as she considered the entire record and substantial evidence therein supports her opinion. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from [non-examining sources] may be entitled to greater weight than the opinions of

treating or examining souces."); *accord, e.g.*, *Privett v. Astrue*, No. CIV.A. 08-141-GWU, 2009 WL 1649489, at *4 (E.D. Ky. June 10, 2009). So long as the ALJ grants "'some indication'" she considered facts not before a non-examining source who "did not review a complete case record," reliance on such source will not result in error. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). As the Defendant notes, Plaintiff's insured period ended only two months after Dr. Nelson reviewed his record. (Tr. 102-10). Of the records not before him, only several pages arose from within his insured period. (Tr. 335-68) (Dr. Kahlil's opinion: December 2014); (Tr. 392-405) (Bone & Joint Institute: July 2013 to October 2013). More importantly, however, the ALJ appears to have considered all records not before Dr. Nelson. She discussed Dr. Kahlil's December 2014 opinion in detail before according it little weight, and she partially discounted Dr. Nelson's opinion "based on the medical evidence and the claimant's testimony regarding his ongoing joint pain, . . ." (Tr. 34). She also expressly cited and discussed two of the exhibits not before Dr. Nelson. (*Id.*). This was enough indication that she considered the entire record, and to the extent the ALJ relied on Dr. Nelson's opinion, she was entitled to do so. *See, e.g.*, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)); *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 750 (E.D. Mich. 2015) ("There is no requirement . . . that either the ALJ or this Court discuss every piece of evidence in the administrative record").

18

In making his argument, Plaintiff invokes *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979), for the fairly obvious proposition that an ALJ "may not arbitrarily choose to ignore uncontroverted medical testimony." Aside from the fact that *Goodley* is not a Sixth-Circuit case, it proves inapposite on these facts. Indeed, Dr. Kahlil's testimony was *controverted* by considerable record evidence, which the ALJ addressed at some length and found more persuasive. (Tr. 32-34). Moreover, as I discuss in greater detail below, the ALJ furnished good reasons for discounting his opinion, proving her consideration thereof anything but arbitrary.

In essence, Plaintiff avers the ALJ "cherry pick[ed] the medical records" to support his RFC, favoring only information detrimental to his claim. (Doc. 12 at ID 477). The record, however, does not substantiate Plaintiff's concern. In explaining her RFC assessment, the ALJ provided a fairly comprehensive summary of Plaintiff's testimony and the objective evidence at issue in weighing that evidence. (Tr. 33) (citing (Tr. 258, 262, 289, 294, 301, 307)). Thereafter, she also provided discussions of relevant evidence from the medical sources of record, relating even records post-dating Plaintiff's date last insured to his insured period where appropriate. (Tr. 34) (citing (Tr. 375)). The record supports her findings as to Plaintiff's RFC. *See, e.g.*, (Tr. 258, 260, 287, 294, 394) (absence of significant swelling); (Tr. 289, 301, 307) (normal gait); (Tr. 258, 301) (normal range of motion); (Tr. 258, 260, 262, 265, 301) (normal motor strength); (Tr. 290-91, 301, 310) (mild objective evidence); (Tr. 260-61, 264, 287, 289, 294, 303, 395) (success with pain medication). Ultimately, I see "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence,"

and Plaintiff "has not persuasively shown that the ALJ erred in conducting this difficult task." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

For these reasons, the Court should reject Plaintiff's argument on this ground.

### 2.     Weight Accorded Dr. Kahlil

Plaintiff next argues the ALJ violated the treating physician rule. (Doc. 12 at ID 474-81). In his view, "there is no real explanation as to why Dr. Kahlil's opinions were not given controlling weight." (*Id.* at ID 476). The only explanation given, Plaintiff avers, rests on "a few snippets of the medical evidence . . . . or more specifically . . . the same 15 pages" of the "approximately 175 pages of medical support." (*Id.* at ID 477). Even the pages cited by the ALJ, he suggests, contain "support for [Plaintiff's] conditions" as well. (*Id.*). For example, Plaintiff takes umbrage with the ALJ's failure to explicitly mention the injections he received in his knee and ankle, the fact that his swelling returned on occasion, his multiple references to extreme pain, and his fatigue, all of which (he posits) counteract the reasons the ALJ gave for his weight assignment. (*Id.* at ID 477-80).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating*

source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at \*6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

A review of the ALJ's rationale shows she supplied good reasons for assigning Dr. Kahlil's opinion little weight. She determined that Plaintiff's normal gait, normal range of motion, and lack of tenderness during treatment undermined certain restrictions Dr. Kahlil prescribed. (Tr. 34); *see also, e.g.*, (Tr. 258. 260, 262, 265, 287, 294, 301, 307, 394) (normal gait, normal range of motion, adequate motor strength, lack of tenderness, lack of numbness, and/or mild swelling). She also noted that evidence of Plaintiff's "active" lifestyle per numerous physical reports, as well as his success with pain medication and injections, detracted from the credibility of his pain reporting. (Tr. 33); *see also, e.g.*, (Tr. 260-61, 264, 284) (observing Plaintiff as "pretty active"); (Tr. 260-61, 264, 287, 289, 294, 303, 395) (relief with pain medication). Tellingly, she did not reject Dr. Kahlil's opinion outright, but granted it partial weight with respect to the climbing restrictions he recommended. (Tr. 34). This was likely more generous than necessary, as Dr. Kahlil's December 2014 opinion was entered as a check-box form containing virtually no narrative explanation for his findings. (Tr. 217-26); *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-

14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) ("[B]ecause Dr. Hussain's medical source statement is in check-box format, it is an impotent addition to the record with little to no persuasive value" (citing *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016)).

Because the ALJ furnished reasons "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight," the ALJ's weight-assignment as to Dr. Kahlil is supported by substantial evidence. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Court should find Plaintiff's corresponding misgivings unpersuasive.

### 3.    Credibility Assessment

In his last argument, Plaintiff suggests the ALJ failed to properly consider the factors set forth in 20 C.F.R. § 404.1529.[2] (Doc. 12 at ID 483-84). He also suggests her findings were "simply not based on a full and complete reading of this record" because "[t]he only cited support" therefor "was that [Plaintiff] was active," without more. (*Id.* at ID 484).

In *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997), the Sixth Circuit reiterated its two-pronged test for evaluating claimants' allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether

---

[2] Plaintiff mistakenly suggests the ALJ should have applied the factors set forth in 20 C.F.R. § 416.929(c), but this regulation informs the consideration of pain allegations in the context of SSI rather than DIB. Because Plaintiff applied only for DIB, I construe Plaintiff as desiring the proper analysis under 20 C.F.R. § 404.1529(c).

> objective medical evidence confirms the severity of the alleged pain arising
> from the condition; or (2) whether the objectively established medical
> condition is of such a severity that it can reasonably be expected to produce
> the alleged disabling pain.

*Id.* at 527 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). An ALJ may not disregard "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work . . . solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).

Contrary to Plaintiff's lamentations, the ALJ outlined a number of reasons for his credibility determination. In addition to observing Plaintiff's not insignificant daily activities, the ALJ cited, for instance, Plaintiff's success with pain medications and injections, *e.g.*, (Tr. 260-61, 264, 287, 289, 294, 303, 395), his "pretty active" lifestyle, *e.g.*, (Tr. 260-61, 264, 284), his repeated reporting of mild pain, *e.g.*, (Tr. 257, 287-88, 293), and his lack of significant treatment for his shoulder issues and carpal tunnel syndrome. (Tr. 33-34). These are valid reasons that cast doubt upon the Plaintiff's bare subjective statements.

To this, Plaintiff avers that the ALJ took his testimony as to his daily activities out of context, and that—as he described them—they were entirely inconsistent with the capacity to work a job. (Doc. 12 at ID 484). This argument misses the mark; the ALJ wrangled enough evidence in her credibility analysis to fracture the integrity of Plaintiff's descriptions of his daily activities and level of pain. A surface-level reading of his testimony could (perhaps) support a finding of disability, but the ALJ must dive deeper

than this, and her adverse findings are entitled to considerable deference. *Accord, e.g.*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). And in any event, the ALJ did not blindly discount Plaintiff's allegations, as her discussion makes evident. *See* (Tr. 34) (reasoning "based on the medical evidence *and the claimant's testimony regarding his ongoing joint pain*" that Plaintiff "would be further limited" than Dr. Nelson suspected).

Put simply, the ALJ supplied a cohesive rationale for her adverse credibility determination, buttressed by substantial evidence, and this Court should not disturb it. *See generally Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

### 4.    Step Five Finding

At Step Five of her analysis, the ALJ finds Plaintiff not disabled because there existed 60,000 jobs as a surveillance-system monitor in the national economy. (Tr. 35-36). Although Plaintiff does not attribute error to this portion of the ALJ's analysis, I find it flawed and raise the issue *sua sponte*.

Courts in the Sixth Circuit are split as to whether the job 'surveillance-system monitor' can furnish, on its own, a significant number of jobs in the national economy. In *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010), the Sixth Circuit found the DOT's description of this job "potentially vulnerable" as "obsolete," and reliance thereupon requiring "a more recent source of information [to] be consulted." Indeed, the DOT was "more than a decade old" when the ALJ heard Cunningham's claim, and the

Sixth Circuit remanded to determine "whether the DOT listing[]" of surveillance-system monitor was "reliable in light of the economy as it existed at the time of the hearing before the ALJ." *Id.* at 615-16. Although *Cunningham* "did not declare that the job of security monitor was unreliable or obsolete," *Hayes v. Comm'r of Soc. Sec.*, No. 1:09-cv-1107, 2011 WL 2633945, at *12 (W.D. Mich. June 15, 2011), the record nevertheless "must be sufficient to satisfy the Commissioner's step five burden," *Rollston v. Comm'r of Soc. Sec.*, No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016).

Those reading *Cunningham* in a circumscribed manner note that it "is an unpublished, 2-1 decision, which has not been cited since by the Sixth Circuit and has been interpreted narrowly by other courts." *Jones*, 2015 WL 1269225, at *7; *accord Morris v. Comm'r of Soc. Sec.*, No. 1:16-CV-433, 2017 WL 1159809, at *11 (W.D. Mich. Mar. 29, 2017) ("No subsequent Sixth Circuit decision has cited the unpublished *Cunningham* decision or questioned the 'reliability' of VE testimony in a similar fashion."). Such circumspection, however, simply ignores the persuasive value of *Cunningham*'s observation that the DOT's job descriptions plainly seem tired at times—a well-reasoned insight given credence by several later courts. *E.g.*, *Rollston*, 2016 WL 6436676, at *4; *Coulter v. Colvin*, No. 1:13-CV-00011-LLK, 2013 WL 3992445, at *2 (W.D. Ky. Aug. 2, 2013) (remanding because the jobs cited, including surveillance-system monitor, were found potentially obsolete by *Cunningham*); *accord Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 55 (W.D.N.Y. 2002) ("The existence of only one unskilled sedentary job, *i.e.* surveillance system monitor, indicates that the full range of sedentary work is significantly eroded."); *cf. Williams v. Colvin*, No. 1:14-CV-02183, 2015 WL 5165458, at *7-8 (N.D.

Ohio Sept. 2, 2015) (invoking the Sixth Circuit's worry of the DOT's obsolescence as a factor in remanding where surveillance-system monitor was the only position a claimant could perform). The weight of authority tends to advise against remand grounded *solely* upon speculation as to the DOT's accuracy with respect to the description of 'surveillance-system monitor.' *See Smathers v. Comm'r of Soc. Sec.*, No. 2:14-CV-500, 2015 WL 401017, at *5 (S.D. Ohio Jan. 28, 2015) (remanding because the VE's surveillance-system monitor job figure—upon which the ALJ relied—remained susceptible to multiple interpretations and "the difference" between them "may very well be significant."), *R. & R. adopted*, No. 2:14-CV-500, 2015 WL 5568324 (S.D. Ohio Sept. 22, 2015); *Belew v. Astrue*, No. CIV.A. 2:11-107-DCR, 2012 WL 3027114, at *10 (E.D. Ky. July 24, 2012) ("The VE testified that the hypothetical RFC and limitations were 'consistent with nearly the full range of sedentary and unskilled work.' . . . The fact that one or even two of the listed examples of sedentary unskilled work may be outdated does not make it unreasonable for the ALJ to rely on the VE's conclusion that Belew is capable of performing 'pretty much a full range of sedentary unskilled work.'").

The ALJ's decision at issue, however, relied only upon an estimate of the national jobs in existence for surveillance-system monitor, and included no discussion as to the availability or accessibility of such positions.

Admittedly, case law and regulations do not provide a foolproof rubric for fulfilling the analytical task at Step Five.  They do not, for instance, require a specification of regional numbers, *per se*, even though such a figure often proves useful. *E.g.*, *Gibbens v. Comm'r of Soc. Sec.*, No. 2:14-CV-185, 2015 WL 5682865, at *7 (W.D. Mich. Sept. 25,

2015) ("[T]he Commissioner is not required to show that job opportunities exist within the local area." (quoting *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)) (internal quotation marks omitted)), *aff'd*, 659 F. App'x 238 (6th Cir. 2016). Indeed, the relevant regulations note that "it does not matter whether . . . [w]ork exists in the immediate area in which you live," 20 C.F.R. § 416.966(a)(1) (1997), though they exclude from the category of appropriate occupations those "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [plaintiff] live[s]," *id.* § 404.1566(b). To ensure accuracy in ALJ findings at Step Five, however, the Sixth Circuit laid out several factors that courts should consider in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988):

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability, the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

The ALJ's failure to solicit regional numbers or discuss any of these factors in detail at Step Five illustrates, in turn, her failure to even consider numerous factors critical to the substantial-number-of-jobs inquiry. This is not to say that the ALJ did not consider any of these factors in earlier parts of her opinion. But *Hall* commands the consideration of "many criteria" at Step Five, and the ALJ here baldly failed to adequately consider "the reliability of the vocational expert's testimony," "the distance claimant is capable of traveling to engage in the assigned work," "the isolated nature of the jobs," or "the types and availability of such work," among other things. In a case such as this, where Plaintiff claims

considerable difficulty driving for long distances, *e.g.*, (Tr. 61), it is essential that the ALJ grapple with these factors in a meaningful way. That the VE identified only one (suspect) category of jobs Plaintiff could perform strengthens this conclusion. The error here is not harmless because it imperils the foundational rationale of the ALJ's Step Five determination. Remand is required. And on remand, the ALJ should clarify her position on these issues and ensure the Court (and Plaintiff) can track her reasoning.

Sentence Four of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A court typically cannot grant summary judgment *sua sponte*, without prior notice, but notice is not required when "merely remanding for further review" in the Social Security context. *E.g.*, *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 641 & n.7 (E.D. Mich. 2005). Precedent certainly exists for issuing a *sua sponte* remand under Sentence Four. *See Martin v. Comm'r of Soc. Sec.*, 61 F. App'x 191, 201 (6th Cir. 2003) (Moore, J., dissenting) ("A district court . . . has the authority to remand under sentence four, and in fact is '*obliged* to do so if all of the essential factual issues have not yet been resolved.'" (quoting *Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994))); *Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C. Cir. 1977) ("While a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte."); *Bucha v. Comm'r of Soc. Sec.*, No. 1:15-CV-1174, 2016 WL 5340271, at *3 (W.D. Mich. Sept. 23, 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the wrong standard in this case

28

as a matter of law." (citing *Igonia*, 568 F.2d at 1387)); *Wenzlick v. Astrue*, No. CIV. 08-CV-12414, 2009 WL 2777711, at *2 (E.D. Mich. Aug. 28, 2009) (observing "some precedent for ordering a remand *sua sponte* under the fourth sentence" of section 405(g)). Although the Commissioner could argue that Plaintiff waived any objection to the ALJ's Step-Five finding by failing to raise it in the instant Motion, waiver is an equitable doctrine, employed at the discretion of this Court. *E.g.*, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (characterizing the doctrine of waiver as "prudential and not jurisdictional"); *accord Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 549 (6th Cir. 2012) (Moore, J., concurring); *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 124 (6th Cir. 2009); *Gasca-Rodriguez v. Holder*, 322 F. App'x 447, 449 (6th Cir. 2009) (quoting *Youghiogheny and Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999)).

For these reasons, the Court should remand the present case for further consideration at Step Five as to whether Plaintiff is capable of performing a substantial number of jobs in the national economy.

### H.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 12), be **GRANTED**, the Commissioner's Motion, (Doc. 13), be **DENIED**, and this case be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 7, 2018                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge


## <u>CERTIFICATION</u>

 I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 7, 2018                     By s/Kristen Castaneda
                                           Case Manager