# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVSION

| | |
|---|---|
| HUGH ONEAL, <br><br> Plaintiff, <br><br> vs. <br><br> SOCIAL SECURITY COMMISSIONER, <br><br> Defendant. | 4:17-CV-11380-TGB <br><br> ORDER REJECTING REPORT AND RECOMMENDATION (DKT. 14) |

This case is an appeal of the denial of Plaintiff's application for social security disability insurance benefits. This matter is before the Court on Magistrate Judge Patricia T. Morris's Report and Recommendation dated February 7, 2018 (Dkt. 14), recommending that Plaintiff's motion for summary judgment be granted, that Defendant's motion for summary judgment be denied, and that this matter be remanded for further proceedings.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1). The Commissioner filed timely objections (Dkt. 27) to the report and recommendation and Plaintiff filed a response to Defendant's objections (Dkt. 28). A district court must conduct a de novo review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*.

The Court has reviewed Magistrate Judge Morris's report and recommendation, and Defendant's objections thereto. For the reasons set forth below, Defendant's objections are **SUSTAINED**, and the report and recommendation is **REJECTED**. Consequently, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

## A. The Social Security Act

The Social Security Act (the Act) "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if []he cannot, in light of h[is] age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id*. § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id*. § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id*. § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. See id.; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that []he is precluded from performing h[is] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the

analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized pursuant to 42 U.S.C. § 405(g). If the Appeals Council denies review, then the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This sub-

stantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

## B. Defendant's Objections

The Court begins by commending the thorough and carefully reasoned report and recommendation that Magistrate Judge Morris prepared. The Court recognizes the considerable effort taken in analyzing Plaintiff's arguments, and explaining the reasoning for rejecting them. However, Defendant's filing of objections to the report and recommendation obligates this Court to conduct a de novo review in light of those objections, and Plaintiff's response thereto, and after doing so the Court finds that it must disagree with the final result recommended the Magistrate Judge, and thus cannot adopt the recommendation.

In his motion for summary judgment, Plaintiff raised three challenges to the ALJ's written opinion: (1) that the ALJ improperly found Plaintiff capable of performing a reduced range of sedentary work (Dkt.

12 at Pg ID 469-74); (2) that the ALJ inadequately weighed the opinion of Dr. Kahlil, Plaintiff's treating physician (*Id.* at Pg ID 474-81); and (3) that the ALJ's credibility finding lacked support (*Id.* at Pg ID 481-85). Magistrate Judge Morris's report and recommendation found all of the arguments that Plaintiff raised in his summary judgment motion unavailing. Plaintiff has not lodged any objections to these recommendations.

After rejecting the arguments advanced by Plaintiff, Magistrate Judge Morris's report and recommendation–sua sponte–determined that a remand was warranted based on an unpublished Sixth Circuit case, *Cunningham v. Astrue*, 360 Fed. App'x 606, 615 (6th Cir. 2010). In *Cunningham*, the claimant challenged the ALJ's reliance on a "security camera monitor" job to support a step-five denial. 360 Fed. App'x at 614-15. A divided panel decided that remand was necessary because the vocational expert testimony had relied on the Dictionary of Occupational Titles (DOT) as the evidence for the availability of the security camera monitor job, when a more current vocational resource, O*NET, did not include that job. This called into question the reliability of the vocational expert's testimony. *Id.* at 616. But Sixth Circuit's reasoning in the unpublished

7

*Cunningham* opinion appears not to have been followed in subsequent cases.

A thorough discussion of the pervasive criticism directed at *Cunningham* can be found in a recent opinion from the Eastern District of Kentucky. *See Kidd v. Berryhill,* No. 5:17-CV-420-REW, 2018 WL 3040894 at *7 (E.D. Ky. June 19, 2018). Most notably, post-*Cunningham*, the Sixth Circuit directly held, in a published decision that the Dictionary of Occupational Titles (DOT) remains a reliable source of evidence: "To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (explicitly calling the DOT, and other "various governmental publications," sources of "reliable job information"). This is consistent with the Sixth Circuit's pre-*Cunningham* case law as well. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). As recognized in *Kidd*, "to the extent *Cunningham* could be read to imply blanket disapproval of the DOT, *Lindsley's* unanimous, prior, published guidance, as well as *Kyle's* unanimous, subsequent, published direction, clearly trump." *Kidd*, at *7.

Generally, vocational expert testimony constitutes substantial evidence for an ALJ's step-five determination if it is in response to a hypothetical question that accurately reflects the claimant's residual functional capacity. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Here, the ALJ properly relied on Ms. Diane Regan's testimony, and found that a person with Plaintiff's limitations could do a significant number of jobs as a surveillance-system monitor (60,000 in the national economy) (Tr. 35-36, 98-99). *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991) (DOT), § 379.367-010. In accordance with Social Security Ruling (SSR) 00-4p, the ALJ asked Ms. Regan whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 99). *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Ms. Regan responded that it was (Tr. 99).

Plaintiff's counsel was given an opportunity to cross-examine vocational expert Ms. Regan about the surveillance monitor job, but chose not to do so (Tr. 98-100). As such, the ALJ had no reason to probe "the availability or accessibility of such positions," as suggested by the report and recommendation (Dkt. 14, R&R at 26). Plaintiff failed to take of ad-

vantage of the opportunity to cross-examine the VE regarding her opinions by questioning whether the DOT was an adequate source, or upon what other grounds the VE based her opinion. As such, "the ALJ had no duty to convene a second hearing to pepper the VE with questions that [plaintiff] could have raised initially." *See Kidd v. Berryhill*, No. 5:17-cv-420, 2018 WL 3040894, at *4 (E.D. Ky. June 19, 2018) (Plaintiff "could have extensively cross-examined [the VE] on the topic he now raises, but he did not"). Plaintiff's failure to object to the VE's testimony during the hearing waived her right to raise such issues in district court. *See Keehl v. Comm'r of Soc. Sec.*, No. 1:18-CV-281, 2018 WL 4352155, at *4 (W.D. Mich. Sept. 12, 2018). "A claimant simply 'may not now complain in federal court when [s]he 'failed to cross examine' a VE on a topic 'when [s]he had an opportunity to do so.'" *Kidd*, 2018 WL 3040894, at *6 (quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)). The Commissioner's objections to the report and recommendation are well-taken.

///

## CONCLUSION

For the reasons set forth above, Defendant's objections are **SUSTAINED**, and the report and recommendation is **REJECTED**. Consequently, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the findings and conclusions of the Commissioner are **AFFIRMED**.

**SO ORDERED**.

BY THE COURT:

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: October 29, 2018

## **Certificate of Service**

I hereby certify that this Order was electronically submitted on October 29, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager